USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3-28-13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JEANETTE TOOMER,                                    :

                      **Plaintiff,**       :

                                              :

           - against -                               :

THE DEPARTMENT OF EDUCATION OF THE       :
CITY OF NEW YORK,

                         :

                   **Defendant.**      :

**OPINION AND ORDER**

**09 Civ. 9034 (RLE)**

**RONALD L. ELLIS, United States Magistrate Judge:**

## I.  INTRODUCTION

Plaintiff Jeanette Toomer ("Toomer") brings this action against the Department of Education of the City of New York ("DOE"), claiming employment discrimination pursuant to the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, ("ADEA"); Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.*; New York State Human Rights Law; New York Executive Law §§ 290, *et seq.*; and § 8-107 of the New York City Administrative Code ("Human Rights Laws") for failing to promote her to various assistant principal positions, and failing to hire her as an English teacher and literary coach.  Defendant moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  The Parties have consented to this Court's jurisdiction pursuant to 28 U.S.C. § 636(c).

For the reasons that follow, the DOE's motion is **GRANTED**, in part, and **DENIED**, in part.

## II.  BACKGROUND

Toomer, an African-American female born in 1957, is an employee of the DOE, and is currently an English teacher at the School for Community Research and Learning in the Bronx.

(Compl. ¶ 1; Pl.'s Decl. ¶ 2.)  She received a bachelor of arts from Barnard College, Columbia University, in 1975 and a masters degree in education from New York University in 1993.  (Pl.'s Decl. ¶ 6.)  She earned a masters degree in school leadership in 2010.  (*Id.*)  Toomer also received a New York State Permanent Certificate teaching English for grades seven through twelve and a New York State supervisory license in 2006.  (*Id.* at ¶ 5.)

Before working at the DOE, Toomer was a dean at a private high school for a year. (Compl. ¶ 7; Pl.'s Decl. ¶ 12.)  She has been a teacher for the DOE in various schools since 2002.  (Pl.'s Decl. ¶ 4.)  Toomer was a teacher at A. Philip Randolph High School ("Randolph") and taught various subjects such as English, language of argument, and preparatory classes from 2004 to 2007.  (Compl. ¶ 7; Pl.'s Decl. ¶ 12.)  She was also a lead teacher at Salome Urena Middle School from August 2007 to June 2008.  (Pl.'s Decl. ¶ 7, 10.)  Toomer applied for sixty-five different positions at the DOE between 2005 and 2010, (*id.* ¶ 15-19.), but only six of her applications – one English teacher position, one literary coach position, and four assistant principal positions – are presently being disputed.[1]  (Pl.'s Resp. to Def.'s 56.1 Stat. ("Pl.'s 56.1 Resp.") ¶¶ 14, 40, 65.)

## A.    The C-30 Interview Process

Assistant principal applicants must go through the C-30 interview process and be appointed by a hiring manager.  (Def.'s 56.1 Stat. ¶ 7; Def.'s  Mot. Summ. J. ("Def.'s Mot."), Ex. E, at 4.)  The hiring manager receives a list of eligible candidates, sets the date for interviews, and forms the Level I committee.  (*Id.*)  The Level I committee consists of either a

---

[1] Toomer alleges that a position she applied for in September 2008 at Randolph was awarded to a Mr. Jacobi, a Caucasian male.  (Pl.'s Decl. ¶ 19.)  The Parties' submissions do not clarify this claim and the Court is unable to make any determination in relation to it.  Therefore, the Court is not considering Toomer's claim where Mr. Jacobi was hired in her stead, as there is nothing before the Court besides Toomer's declaration to assist it in rendering a decision.

supervisor of the school where the applicant is applying or a supervisor of a different school within the same borough, two members from United Federation of Teachers Union ("UFT"), one school support staff member represented by D.C. 37, four to seven parents, one or two students, one designee of School Support Organization, and one designee of an intermediary organization. (Def.'s Mot., Ex. E, at 6-7.)

The hiring manager conducts a preliminary review of all eligible applicants. (*Id.*) If needed, she may consult appropriate network leaders or DOE employees. (*Id.*) The hiring manager then selects three to five candidates for evaluation by the Level I Committee, which interviews the applicants, receives the candidates' written responses to prompts, and rates them using their composite rating sheets based on NYC School Leadership Competencies criteria. (*Id.* at 5, 7.) The committee members then submit their scores, evaluations, and recommendations to the hiring manager. (*Id.*)

At Level II, the hiring manager considers the information submitted by the committee and may personally interview the candidates again. (*Id.* at 6.) She may also use alternative professional evaluation techniques other than written tests when making her decision. (Def.'s 56.1 Stat. ¶ 10.) Finally, the hiring manager selects a candidate for appointment to the position.

## B.    Toomer's Interviews and Results

### 1.    June 2008 Assistant Principal Position

On June 2, 2008, Toomer applied for an assistant principal position at Randolph. (Pl.'s Decl. ¶ 17.) For the assistant principal position, the school principal is the hiring manager. In June 2008, the principal at Randolph was Henry Rubio ("Rubio"). (Def.'s 56.1 Stat. ¶ 335; Def.'s Mot., Ex. C, 21:18-25; 22:1-6.) Rubio did not select Toomer for a Level I interview. (Def.'s Mot., Ex. D.) He appointed Gilbert Garcia, a hispanic male in his 30's, to the position.

3

(Compl.

¶ 7.)  Garcia was a bilingual ESL coordinator and a bilingual resource teacher before his

selection.  (Pl.'s Att'y's Affirm ("Karlin Affirm"), Ex. H, at 2-3.)  He had two masters degrees in

teaching English as a second language and in administration and supervision at the time of his

appointment.  (*Id.* at 2.)

###    2.    September 2008 English Teacher Position

Toomer applied for an English teacher position at Randolph in September 2008.  She

claims the UFT contract gave her the right to return to Randolph, but Rubio violated the contract

and discriminated against her by hiring "Ms. Cepello," an unlicensed Caucasian teacher who is

younger than Toomer.  (Pl.'s Decl. ¶ 19.)  The DOE maintains that Toomer was not entitled to a

right to return because there was no vacancy for an English teacher, only for a literary coach and

a Spanish teacher.  (Def.'s 56.1 Stat. ¶ 339; Def.'s Mot., Ex. S.)  The DOE further indicates that

Rubio hired "Ms. Cepello" on a temporary basis to teach two English classes because another

teacher had suddenly died.  (Def.'s Mot., Ex. S.)

###    3.    September 2008 Literary Coach Position

Toomer also applied for the literary coach position in 2008, but was not hired.  (Def.'s

56.1 Stat. ¶¶ 341-42.)  Dionne Coy-Bailey, an African-American woman over forty, was

selected.  (Def.'s 56.1 Stat. ¶¶ 342-43.)  Coy-Bailey was a literary coach at the High School for

Medical Science.  (Def.'s Mot., Ex. Q.)  She also had been an English teacher at York Early

College Academy.  (*Id.*)  Coy-Bailey had masters degrees in arts and in education when she was

appointed.  (*Id.*)

4

### 4.    April 2009 Assistant Principal Position

Toomer applied for an assistant principal position at Gregorio Luperon High School ("Gregorio") in April 2009. (Def.'s 56.1 Stat. ¶ 171.) Toomer was interviewed by "Mr. Villar," but was not appointed to the position. (*Id.* ¶172.) She does not know Mr. Villar's race, but believes he was in his 40's at the time of the interview. (*Id.*) Mr Villar appointed a Hispanic female in her 30's to the position. (Pl.'s 56.1 Resp. ¶ 174.)

### 5.    May 2009 Assistant Principal Position

Toomer applied for another assistant principal position at Randolph on May 29, 2009. (Pl.'s Decl. ¶ 18.) Rubio was again the hiring manager. Although Toomer was selected for a Level I interview, she did not attend because of inclement weather. (*Id.*) The interview was not rescheduled. (*Id.*) Rubio hired "Mr. Pepin," a Dominican male in his 30's, (*id.*), whose application and resume has not been produced. (Pl.'s Mem. Opp'n Def.'s Memo. Supp. Mot. Summ. J. ("Pl.'s Opp'n"), at 8.)

### 6.    January 2010 Assistant Principal Position

Toomer applied for another assistant principal position at Randolph in January 2010. (Def.'s 56.1 Stat. ¶ 352.) She received a Level I interview, but was not appointed to the position. (Def.'s Mot., Ex. R.) Coy-Bailey, the same African-American woman appointed to the 2008 literary position, was hired. (Def.'s 56.1 Stat. ¶ 357.)

## C.    Past Allegations of Discrimination

Toomer points to a deposition given by Rubio in a different case[2] where he testified that he knew the two women who were responsible for hiring him, Gail Reeves and Fransesca Peña, from their involvement in the American Dominican Administrators and Supervisors Association.

---

[2] *Self v. Dep't of Educ. of N.Y.*, 844 F. Supp. 2d 428 (S.D.N.Y. 2012)

(Karlin Affirm, Ex. A, Rubio Dep. 20:4-21.)  Rubio also testified that after Tracie Benjamin (an African-American teacher) left Randolph, he replaced her with Altagracia Del Orbre, a Dominican teacher, (*id.* at 32:8-16.), and that he appointed Gilbert Garcia, a Dominican male, as assistant principal.  (*Id.* 54:7-9.)  While the DOE points out that three of the assistant principals appointed by Rubio during his tenure were African-American, (Def.'s 56.1 Stat. ¶ 366.), Toomer claims that Rubio was under investigation for race discrimination when he hired the three African-American assistant principals.  (Pl.'s 56.1 Resp. ¶ 366.)

Toomer also points to deposition testimony in *Self* from Joyce Stena – an African-American teacher at Randolph while Rubio was principal – claiming that Rubio discriminated against her by reducing the number of chemistry classes from eleven to one, while simultaneously increasing the number of earth science classes.   (Pl.'s Opp'n at 4.)  Stena testified that Rubio believed students at Randolph were performing better in earth science. (Karlin Affirm, Ex. B, Stena Dep. 26:12-16)5:13-20.)  Stena also testified that she and Mr. Afrifa, the two African-American chemistry teachers, were excessed after the chemistry course reduction, (*id.* at 21:1-5; 28:3-13:1-21.), and that Glen Rayzor, an African-American assistant principal, was "asked by Mr. Rubio" to resign – and did.  (Pl.'s Opp'n at 4.)  The Rayzor position is the assistant principal position to which Toomer had applied in May 2008, but for which Rubio selected Gilbert Garcia.  (Karlin Affirm, Ex. A, Rubio Dep. 54:7-9.)

Toomer also points to testimony in *Self* from Foreoluwa Salau, a teacher at Randolph during Rubio's tenure, who testified that Rubio discriminated against her by giving her an "unsatisfactory" rating during the 2006-2007 school year.  (Pl.'s Opp'n at 3; Karlin Affirm, Ex. D, Salau Dep. 24:18-20.)  Salau had begun teaching at Randolph in 2001 and that was the first time she had ever received an "unsatisfactory" rating.  (Pl's Opp'n at 4; Karlin Affirm, Ex. D,

Salau Dep. 24:13-17.)

Toomer states that Salau was not the only African-American teacher at Randolph who received an "unsatisfactory" rating in 2007. (Pl.'s Opp'n at 5.)   For the 2006-2007 school year, half of the African-American teachers received an "unsatisfactory" rating, and in the following year five of the nine teachers that received an "unsatisfactory" were African-American. (*Id.* at 5-6.) For the 2008-2009 school year, eight of the sixteen teachers who received this rating were African-American. (*Id.* at 6.) Altogether, African-Americans received half of the unsatisfactory ratings from 2006 to 2009 but made up only one third of the teaching staff. (*Id.*)

Lastly, Toomer points to a declaration from Juan Medina, a teacher at Randolph. Medina stated that Rubio told him in confidence, "Those people are not like us," and that "African-Americans are hard to deal with." (Karlin Affirm, Ex. E., Medina Decl.) Medina understood Rubio's comment to be racial in nature and inappropriate, and showed that he "harbored a racial basis against African-Americans." (*Id.*)

## III.   DISCUSSION

### A.   Legal Standards

#### 1.   Summary Judgment

"Summary judgment may be granted if, upon reviewing the evidence in the light most favorable to the non-movant, the court determines that there is no genuine issue of material fact." *Richardson v. Selsky*, 5 F.3d 616, 621 (2d Cir. 1993).  The party seeking summary judgment bears the burden of establishing that no genuine issue of fact exists. *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 36 (2d Cir. 1994).  The movant's burden will be satisfied if it can point to an absence of evidence to support an essential element of the nonmoving party's claim. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F3d. 14, 18 (2d Cir. 1995).  Once the

movant makes a properly supported motion, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "In considering the motion, a court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986). Summary judgment should be granted where no reasonable trier of fact could find in favor of the nonmoving party, *H. L. Hayden Co. of New York, Inc. v. Siemens Med. Sys., Inc.,* 879 F.2d 1005, 1011 (2d Cir. 1989), thereby "dispos[ing] of meritless claims before becoming entrenched in a frivolous and costly trial." *Donahue v. Windsor Locks Bd. of Fire Comm'rs,* 834 F.2d 54, 58 (2d Cir. 1987).

## 2.      Analytical Framework for Summary Judgment in Discrimination Cases

Title VII prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 505 (1993). The ADEA makes it unlawful for employers "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1); *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106-07 (2d Cir. 2010). The ADEA covers individuals that are at least forty years old. 29 U.S.C. § 631(a). Discrimination cases based on circumstantial evidence brought pursuant to the ADEA and Title VII are analyzed under the familiar burden-shifting framework established in *McDonell-Douglas Corp. v. Green*, 411, U.S. 792, 802-03 (1973). *Gaffney v. Dep't of Info. Tech. & Telecomms.*, 536 F. Supp. 2d 445, 463 (S.D.N.Y. 2008) (*quoting Ascione v. Pfizer, Inc.*, 312 F. Supp. 2d 572, 576 (S.D.N.Y. 2004); *accord Reeves v. Sanderson Plumbing*

8

*Prods, Inc.*, 530 U.S. 133, 142 (2000)).

Under the burden-shifting framework, a plaintiff must first establish a *prima facie* case by showing that "(1) at the relevant time the plaintiff was a member of the protected class; (2) the plaintiff was qualified for the job; (3) the plaintiff suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005). "This burden is not a heavy one." *Gorzynski*, 596 F.3d at 107. The burden then shifts to the employer to articulate a legitimate non-discriminatory reason for its actions. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254-55 (1981). The burden shifts back to the plaintiff to prove that the employer's reasons for failing to hire or promote are actually pretext for discrimination. *St. Mary's Honor Ctr.*, 509 U.S. at 517. In essence, the plaintiff must show that the stated reason for the adverse action "was false, and that the discrimination was the real reason." *Id.* at 515.

The elements of an employment discrimination claim are "virtually identical" under the New York Executive Law and Title VII. *Gavigan v. Clarkstown Cent. Sch. Dist.*, 84 F. Supp. 2d 540, 546 (S.D.N.Y. 2000). Similarly, the same analysis used in ADEA claims also applies to claims under the New York Human Rights Law. *Sutera v. Schering Corp.*, 73 F.3d 13, 16 n. 2 (*citing Miller Brewing Co. v. State Div. of Human Rights*, 66 N.Y.2d 937, 938-39 (1985)).

**B.     Toomer's Title VII and ADEA Claims**

Toomer argues that the DOE discriminated against her because of her age, gender, and race by failing to promote her and hire her for the identified positions. Courts have not made any distinction "between the legal standards for a failure to hire claim and a failure to promote claim." *O'Leary v. New York State Unified Court System*, No. 05 Civ. 6772 (HB), 2005 WL 2244483, *5 n. 14 (S.D.N.Y. Aug. 6, 2007).

9

1.    **Toomer's Title VII Claims**

There is no dispute that Toomer meets the first three elements of establishing a *prima facia* case. She is an African-American female who was qualified for but not selected for the positions challenged. The Parties dispute whether the adverse action occurred under circumstances that give rise to an inference of discrimination.[3] The burden of showing that an action occurred under such circumstances in Title VII claims is *de minimis*, and is carried in failure to promote and hire claims by showing that the individual chosen over the plaintiff was outside the protected class. *See Gladwin v. Pozzi*, F. App'x 603, 606 (2d Cir. 2010); *accord Zimmermann v. Assoc. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001). A plaintiff need not have overwhelming evidence of discrimination at this stage. *Baguer v. Spanish Bd. Sys., Inc.*, No. 04 Civ. 8393 (RJS), 2010 WL 2813632, *7 (S.D.N.Y. July 12, 2010) *aff'd*, 423 F. App'x 102 (2d. Cir. 2011) (finding that "brown-skinned Hispanic" plaintiff established a *prima facie* case by showing that he was replaced by an African-American woman).

An employer's burden for a non-discriminatory explanation "is simply one of articulation or production," not of "proving the absence of a discriminatory motive." *Fritz v. Baker*, No. 87 Civ. 5662 (BN), 1990 WL 3921, *17 (S.D.N.Y. Jan. 17, 1990). "Pretext may be demonstrated

---

[3] Relying on *Moreno v. Town of Huntington*, 334 F. App'x 426 (2d Cir. 2009), the DOE argues that Toomer has not establish a *prima facia* case because she lacks evidence "in the form of remarks or actions showing age or gender based animosity towards [her] either by principals or the C-30 committee members." (Def.'s Mem. at 8.) The DOE's reliance on *Moreno* is misplaced because the court in that case was discussing a plaintiff's burden during the third stage of the *McDonnell-Douglas* framework – presenting evidence showing a defendant's proffered reason for the adverse action is pretext for discrimination – not a plaintiff's burden of establishing a *prima facia* case. *See Moreno*, 334 F. App'x at 427 ("We agree with the District Court that plaintiff failed to raise a genuine issue of material fact as to whether defendants' proffered explanation . . . was pretext for discriminatory animus."). As a result, the DOE's arguments against Toomer's *prima facia* case do not address the elements for establishing a *prima facia* case, but focus on whether she will be able to ultimately prove reasons given by the DOE were mere pretext for discrimination. *See, e.g., Collette v. St. Luke's Roosevelt Hosp.*, No. 99 Civ. 4864 (GEL), 2002 WL 31159103, *7 (S.D.N.Y. Sept. 26, 2002). Moreover, Toomer provides evidence that Rubio, the principal of Randolph and hiring manager for the majority of her claims, stated to Medina that "Those people are not like us," and that "African-Americans are hard to deal with." (Karlin Affirm, Ex. E., Medina Decl.).

10

by either the presentation of additional evidence showing that the employer's proffered

explanation is unworthy of credence, or by reliance on the evidence comprising the *prima facie*

case, without more." *Chamber v. TRM Copy Ctr. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994) (citations

and quotations omitted).

      a.      **June 2008 Assistant Principal Position**

On June 2, 2008, Toomer applied for an assistant principal position at Randolph. (Pl.'s

Decl. ¶ 17.) She did not receive an interview. (Def.'s Mot., Ex. D.) Rubio appointed Gilbert

Garcia, a hispanic male, to the position. (Compl. ¶ 7.) Toomer established a *prima facie* case by

showing that she did not get the position, and an individual outside her protected class, African-

American and female, was selected instead. *See Diaz v. New York City Transit Auth.*, 98 F.

App'x 58, 59 (2d Cir. 2004).

The DOE has not provided any non-discriminatory reasons for the adverse employment

action. In its memorandum of law, it highlights Toomer's lack of knowledge of the C-30

interviewers' identities and the qualifications of the individuals appointed to the positions she

applied to, which is disputed, *see* n. 3, *supra*, but fails to rebut Toomer's assertions of

discrimination concerning her June 2, 2008 Randolph assistant principal application. (*See

generally* Def.'s Mem. Supp. Mot. Summ. J. ("Def.'s Mem."), at 4-14.) The DOE's broad-

stroked approach is initially understandable since Toomer alleged acts of discrimination for over

sixty applications. Yet, in the DOE's reply, which was served after Toomer placed the DOE on

notice that she was withdrawing the majority of her claims, (*see* Def.'s Reply Mem. In Supp. Of

Mot. Summ. J. ("Def.'s Reply"), at 2-3), it failed to provide non-discriminatory explanations for

the specific allegations of discrimination. (*See generally id.* at 2-5.)

While a plaintiff retains the ultimate burden of proving discrimination, a question of fact

11

remains when a defendant fails to articulate a non-discriminatory reason for its actions. *See St. Mary's Honor Ctr.*, 509 U.S. at 507, 509-10.  The DOE has not provided an explanation concerning Toomer's June 2008 application, which does not shift the burden back to Toomer to show evidence of pretext. *See Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008). Although courts are tasked with resolving ambiguities and drawing permissible inferences for summary judgment motions, *Gotzynski*, 596 F.3d at 101, courts are warned not to "engage in searching, skeptical analyses of parties' testimony." *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 702 F.3d 685, 693 (2d Cir. 2012).  Therefore, consistent with this Circuit's hesitation in granting summary judgment in employment discrimination cases, *see Gorzynski*, 596 F.3d at 101, and viewing the lack of explanation in the light most favorable to Toomer, *see Guilbert v. Gardner*, 480 F.3d 140, 145 (2d Cir. 2007), summary judgment for Toomer's June 2, 2008 Randolph assistant principal application is **DENIED.**

> **b.      September 2008 English Teacher Position**

Toomer applied for an English teacher position at Randolph in September 2008.  She alleges that Rubio hired "Ms. Cepello," an unlicensed Caucasian teacher.  Toomer establishes a *prima facia* case with respect to her race claim but not with respect to her gender claim.

Toomer asserts that Rubio violated the UFT contract, which gave her a right to return to her original school, and discriminated against her by hiring "Ms. Cepello."  The DOE argues that no English teacher vacancy existed and thus Toomer was not entitled to a right to return.  The DOE supported its position with an exhibit which indicated that the notice of vacancy for an English teacher was incorrect, and that there were vacancies only for a Spanish teacher and literary coach.  (Def.'s Mot., Ex. S.)  The DOE further indicated that the "Ms. Cepello" referred to by Toomer was not a new hire.  The position in question was a temporary opening for an

English teacher that became available at the beginning of the 2008 fall term after another teacher had suddenly died. *Id.* Rubio did not hire a new English teacher, but temporarily assigned an existing substitute teacher, "Ms. Cepello," to additional English classes. The DOE therefore has asserted a legitimate reason for its action since no one was hired to fill the vacancy.

Toomer fails to provide evidence to show that the DOE's explanation is pretext for discrimination. She points to the same evidence used to establish her *prima facie* case as evidence that the DOE's explanation is pretext. Even making inferences in the light most favorable to Toomer, a jury cannot conclude that the DOE discriminated against her when the position she applied for did not exist. Therefore, summary judgment with respect to Toomer's September 2008 Randolph English teacher position is **GRANTED**.

### c.      September 2008 Literary Coach Position

Toomer applied for a literary coach position at Randolph in September 2008, but was not hired. (Def.'s 56.1 Stat. ¶ 341-42.) Dionne Coy-Bailey, an African-American female, was hired. (*Id.* ¶ 342.) Toomer has failed to establish a prima *facie case* of discrimination with respect to either race or gender. Her claim that Rubio had pending charges of discrimination does not entitle her to claim that this individual claim is race or gender based. Summary judgment with respect to Toomer's September 2008 literary coach position is **GRANTED.**

### d.      April 2009 Assistant Principal Position

In April 2009, Toomer applied for an assistant principal position at Gregorio. (Def.'s 56.1 Stat. ¶ 171.) Toomer was interviewed by "Mr. Villar," but was not appointed to the position. (*Id.* ¶ 172.) She alleges that "Mr. Villar" appointed a hispanic female to the position. (Pl.'s 56.1 Resp. ¶ 174.) Toomer has established a *prima facie* claim based on race but not gender.

13

The DOE has not provided any non-discriminatory explanation for this specific adverse action. As with the September 2008 English teacher position, it merely points out that Toomer does not provide information about the selecting official. This fails to address Toomer's *prima facie* case with respect to this vacancy. *See St. Mary's Honor Ctr.*, 509 U.S. at 509-10. Summary judgment for Toomer's April 2009 Gregorio assistant principal application is **DENIED** with respect to her racial discrimination claim, and **GRANTED** with respect to her gender claim.

### e.      May 2009 Assistant Principal Position

On May 29, 2009, Toomer applied for an assistant principal position at Randolph. (Pl.'s Decl. ¶ 18.) She was selected for a Level I interview but did not attend because of inclement weather. (*Id.* at ¶ 18.) The interview was not rescheduled. (*Id.*) Rubio hired "Mr. Pepin," a Dominican male, for the position. (*Id.*) Toomer has established a *prima facie* case with respect to race and gender. The DOE asserts that Toomer's failure to appear for the interview is a sufficient reason to deny her the promotion. In response, Toomer simply restates the evidence used to establish her *prima facie* case. Her arguments do not address the specific explanation provided by the DOE. Even were the Court to consider Rubio's decision not to reschedule the interview, Toomer neither submits any evidence of pretext nor articulates any theory of pretext. The burden on a defendant to produce a non-discriminatory explanation is "simply one of articulation." *Fritz*, 1990 WL 3921, *17. It is a plaintiff's duty to produce evidence that demonstrates discrimination is the actual cause for the adverse employment action. Viewing the evidence in the light most favorable to Toomer, a jury would be unable to conclude that the DOE discriminated against her when she failed to appear for the interview. Summary judgment for Toomer's May 29, 2009 Randolph assistant principal application is **GRANTED.**

14

### f.   January 2010 Assistant Principal Position

In January 2010, Toomer applied for an assistant principal position at Randolph. (Def.'s 56.1 Stat. ¶ 352.) She received an interview and met with the C-30 committee, but was not appointed to the position. (Def.'s Mot., Ex. R.) Coy-Bailey, the same African-American woman appointed to the Randolph literary coach position, was hired. (Def.'s 56.1 Stat. ¶¶ 342-43.) Toomer has failed to establish a *prima facie* case based on either gender or race. Summary judgment for the January 2010 assistant principal application is **GRANTED**.

### 2.   Toomer's ADEA Claims

Claims under the ADEA are analyzed under the *McDonnell-Douglas* burden shifting framework. *D'Cunha v. Genovese/Eckerd Corp.*, 479 F.3d 193, 194-95 (2d Cir. 2007). The burden to establish a *prima facie* case differs under the ADEA than in Title VII cases. When a plaintiff is relying on a substantial age difference to show that an inference of intentional discrimination is permissible, the plaintiff must have some evidence to show that the defendant had knowledge of the plaintiff's age. *Woodman v. WWOR-TV, Inc.*, 441 F.3d 69, 83 (2d Cir. 2005). In most ADEA cases, courts need not address this issue given that employers often "maintain employee age information in their personnel files or are generally aware of employees' relative age from personal on-the-job contact." *Id.* at 80. In the event a defendant raises the issue of awareness, a plaintiff must produce direct or indirect evidence "indicating a defendant's knowledge as to the relative ages of the persons compared." *Id.* at 83 (holding that the plaintiff did not establish a *prima facie* case because she failed to show the acquiring company responsible for her termination was aware her age). Additionally, because the ADEA prohibits discrimination based on age, not class membership, a plaintiff may establish a *prima facie* case when the comparative person is also protected by the ADEA. *See O'Connor v.*

15

*Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312, 313 (1996) ("[T]here can be no greater inference of age discrimination (as opposed to '40 or over' discrimination) when a 40-year-old is replaced by a 39-year-old than when a 56-year-old is replaced by a 40-year-old.").

A plaintiff's burden regarding showing evidence of pretext also differs under the ADEA than under Title VII. In *Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010), the Second Circuit clarified the burden-shifting analysis under the ADEA. The court held that in *Gross v. FBL Financial Servs.*, 557 U.S. 167 (2009), the Supreme Court eliminated "the mixed-motive analysis that circuit courts had brought into the ADEA from Title VII cases." 596 F.3d at 106. The court explained that after *Gross*, "a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but for' cause of the challenged adverse employment action and not just a contributing or motivating factor." *Id.*

With respect to Toomer's ADEA claims, it is difficult to ascertain what particular aspects of the discrimination argument are in dispute – aside from the overarching dispute as to whether the DOE discriminated against Toomer. The Parties' submissions are void of clarity and were not developed within the general understanding of the *McDonnell-Douglas* framework. For example, the DOE focuses much of its argument on Toomer's lack of direct evidence – even though direct evidence is often unavailable in employment discrimination cases[4] – and does not provide non-discriminatory explanations for a number of claims. Similarly, Toomer combined the Title VII and ADEA analyses without identifying the particular application being challenged, and without recognizing that *Ross* and *Gorzynski* eliminated the "mixed motive theory" for ADEA claims. In this context, the Court attempts to determine whether there are genuine issues

---

[4] *See Gorzynski*, 596 F.3d at 101.

of material facts.

### a.    June 2008 Assistant Principal Position

Toomer was not hired for an assistant principal position at Randolph in June 2008. (Pl.'s Decl. ¶ 17.) Garcia, an individual in his 30's, was appointed. (Comp. ¶ 7.) Toomer, who is 54 years old, establishes a *prima facie* case by showing that she did not get the position and an individual in his 30's was selected instead. The DOE has not provided a non-discriminatory explanation for the adverse action. (*See generally* Def.'s Mem. at 12-14.) Therefore, the DOE has not satisfied its burden under *McDonnell-Douglas* framework. *See St. Mary's Honor Ctr.*, 509 U.S. at 510. Summary judgment for Toomer's June 2008 assistant principal application is **DENIED**.

### b.    September 2008 English Teacher Position

Toomer applied for a position as an English teacher at Randolph in September 2008, but was not hired. She states that Rubio hired "Ms. Cepello," a "young white teacher," instead. (Pl.'s Decl. ¶ 19.) Although Toomer does not specify the age-range of Ms. Cepello, she carries her *de minimus* burden of establishing a *prima facie* case because the DOE was likely aware of Toomer's age, and Toomer asserts that Ms. Cepello is younger than her. In *Elliott v. British Tourist Auth.*, 172 F. Supp. 3d 395, 400 (S.D.N.Y. 2001), the plaintiff alleged, without identifying the person, that he was replaced by someone much younger. The court held that the plaintiff failed to establish a *prima facie* case because he did not provide "even a scintilla of record evidence other than the plaintiff's self-serving affirmations." 172 F. Supp. 3d at 400. Here, Toomer does provide evidence by identifying Ms. Cepello, which was confirmed by the DOE, as the individual allegedly hired for the English teacher position at issue. This identification and assertion that Ms. Cepello was younger than her establishes a *prima facie* case.

17

The DOE, however, articulates a non-discriminatory explanation for Toomer's non-selection, namely, that there was no English teacher vacancy in 2008. (Def.'s 56.1 Stat. ¶ 339; Def.'s Mot., Ex. S.) A reasonable jury cannot conclude that Toomer's age was the "but for" cause for the adverse employment action when the position she applied for did not exist. Therefore, summary judgment for Toomer's September 2008 English teacher application is **GRANTED.**

### c.      September 2008 Literary Coach Position

Toomer was not hired for a literary coach position in September 2008. (Def.'s 56.1 Stat. ¶ 341-42.) Coy-Bailey, an individual over 40 years old, was hired. The DOE states that Toomer and Coy-Bailey are in their "late 40's to mid 50's." (*Id.* ¶ 343.) This description does not allow the Court to adequately assess Coy-Bailey's age. Toomer also does not clarify Coy-Bailey's age. (Pl.'s 56.1 Resp. ¶ 343). Given that the Court is considering the DOE's motion for summary judgment, and all inferences must be viewed in the light most favorable to Toomer, it can be inferred that Coy-Bailey is younger than Toomer. Thus, because the DOE likely knew of Toomer's age, and the inference that Coy-Bailey is younger than Toomer, she has established a *prima facie* case. The DOE has not provided a non-discriminatory explanation, failing to carry its burden to dispute Toomer's inference of discrimination. Therefore, summary judgment for Toomer's September 2008 literary coach position is **DENIED.**

### d.      April 2009 Assistant Principal Position

In April 2009, Toomer applied, but was not hired, for an assistant principal position at Gregorio. (Def.'s 56.1 Stat. ¶ 171-72.) An individual in her 30's was hired for the position. (Pl. 56.1 Resp. ¶ 174.) Toomer establishes a *prima facie* case because the DOE likely knew of Toomer's age and the individual selected was younger than Toomer. The DOE does not provide a non-discriminatory explanation, and therefore, has not carried its burden under the *McDonnell-*

18

*Douglas* framework.  Thus, summary judgment for Toomer's April 2009 assistant principal position is **DENIED.**

### e.      May 2009 Assistant Principal Position

Toomer applied for another assistant principal position at Randolph on May 29, 2009. (Pl.'s Decl. ¶ 18.)  She was selected for an interview, but did not attend because of inclement weather.  (*Id.*)  Rubio hired "Mr. Pepin," who was in his 30's.  (*Id.*)  Toomer has established a *prima facie* case by showing that she was older than the person who was hired for the position. The DOE states that Toomer's failure to appear for the interview is a sufficient non-discriminatory explanation for the adverse employment action.  Similar to Toomer's Title VII claim, she points to the conversation between Rubio and Medina, where Medina states that Rubio made inappropriate and discriminatory statements about African-Americans.  A reasonable jury cannot conclude that Toomer's age was the "but for" cause of the adverse action when she failed to appear for the interview.  Therefore, summary judgment for Toomer's May 2009 assistant principal application is **GRANTED.**

### f.      January 2010 Assistant Principal Position

Toomer applied for another assistant principal position at Randolph in January 2010. (Def.'s 56.1 Stat. ¶ 352.)  She received a Level I interview, but was not appointed.  (Def.'s Mot., Ex. R.)  Coy-Bailey, the same person hired for the 2008 literary position, was appointed.  (Def.'s 56.1 Stat. ¶ 342-43.)  As previously mentioned, the Court infers that Coy-Bailey is younger than Toomer.  Therefore, Toomer has established a *prima facie* case.  The DOE articulates a non-discriminatory explanation for hiring Coy-Bailey instead of Toomer.  The C-30 committee members who interviewed both Toomer and Coy-Bailey determined that Coy-Bailey was more qualified.  (Def.'s 56.1 Stat. ¶ 359.)  The C-30 committee gave Toomer an overall rating score of

19

155 and gave Coy-Bailey an overall score of 184. (*Id.* ¶ 360.) The scores and evaluations were

presented to Rubio, who determined after reviewing the materials that Coy-Bailey was more

qualified than Toomer. (*Id.* ¶ 361.) Subjective impressions from an interview is a sufficient

justification for an adverse employment action, absent a showing of discriminatory motive.

*Hurd v. N.Y. Health & Hosps. Corp.*, 04 Civ. 998 (PAC), 2007 WL 678403 at *4 (S.D.N.Y. Mar.

5, 2007). Toomer's evidence of an inappropriate conversation and an alleged history of past

discrimination against African-Americans does not show that the C-30 committee's conclusions

or Rubio's decision to appoint Coy-Bailey were pretext for intentional discrimination.

Therefore, summary judgment for Toomer's January 2010 assistant principal position is

**GRANTED.**

**C.     Toomer's State Law Claims**

In addition to her federal claims, Toomer claims the DOE violated the New York State

Human Rights Law, New York Executive Law §§ 290, *et seq.*, and § 8-107 of the New York

City Administrative Code ("Human Rights Laws") by failing to promote and to hire her. The

DOE argues that Toomer's state law claims should be dismissed because she failed to file a

notice of claim. (Def.'s Mem. at 15-16.) New York Education Law § 3813 requires plaintiffs to

file a notice of claim prior to bringing an action against the DOE or its officers. N.Y. Educ. L.

§ 3813. Section 3813 applies to employment discrimination claims against the DOE.

*Falchenberg v. New York City Dep't of Educ.*, 375 F. Supp. 2d 344, 350 (S.D.N.Y. 2005);

*accord Parochial Bus Sys. v. Bd. of Educ. of the City of New York*, 60 N.Y.2d 539, 549 (1983).

"The notice of claim must set forth, *inter alia*, the nature of the claim, and must be filed within

ninety days of when the claim arises." *Hardy v. New York City Health and Hosp. Corp.*, 165

F.3d 789, 793 (2d Cir. 1999). Notice of claim requirements apply to both state and federal

courts. *Gear v. Dep't of Educ.*, No. 07 Civ. 11102 (NRB), 2009 WL 484424, *5 (S.D.N.Y. Feb. 24, 2009) (*citing Felder v. Casey*, 487 U.S. 131, 151 (1988). The requirement is strictly construed and applies equally to *pro se* plaintiffs. *Gear*, 2009 WL 484424 at *5.

Toomer filed her notice of claim on July 7, 2011, for claims arising in 2010 and 2011. (Def.'s Mot., Ex. X.) She did not file a notice of claim for any of the claims currently before the Court. Although the New York state courts may allow a plaintiff to file a late notice of claim, N. Y. Mun. L. §§ 50-e(5), (7), federal courts are prohibited from granting such permission, and do not have jurisdiction to entertain state law claims that are noncompliant with the notice of claim requirement. *Cortlandt v. Westchester County*, No. 07 Civ. 1783 (MDF), 2007 WL 3238674, * 8 (S.D.N.Y. Oct. 31, 2007). Therefore, because Toomer has not filed a notice of claim relating to any claims currently before the Court, summary judgment for her New York Human Rights Laws claims is **GRANTED**.[5]

---

[5] Moreover, Toomer does not provide any opposition to the DOE's assertion that her state law claims be dismissed. Therefore, the Court also considers her state law claims as abandoned. *See Quintero v. Ride Aid of New York, Inc.*, No. 09 Civ. 6084 (JLC), 2011 WL 5529818, *19 (S.D.N.Y. Jan. 3, 2012).

## IV.   CONCLUSION

For the forgoing reasons, the DOE's summary judgment motion with respect to Toomer's September 2010 and May 29, 2009, Randolph assistant principal age, race, and gender claims; her April 2009 Gregorio assistant principal gender claim; her September 2009 Randolph literary coach race and gender claims; and her September 2008 Randolph English teacher age, race, and gender claims is **GRANTED**.   The DOE's summary judgment motion with respect to Toomer's June 2008 Randolph assistant principal age, race, and gender claims; her September 2009 Randolph literary coach age claim; and her April 2009 Gregorio assistant principal age and race claims is **DENIED**.

The Parties are **HEREBY ORDERED** to appear for a final pretrial conference on **April 23, 2013**, at **10:00 a.m.** in courtroom **18D**.

**SO ORDERED this 28th day of March 2013**
**New York, New York**

**The Honorable Ronald L. Ellis**
**United States Magistrate Judge**